**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**NANCY KOEHLER, ET AL.,**

    **Plaintiffs,**

v.

**FREIGHTQUOTE.COM, INC. and**
**FREIGHTQUOTE 401(k) PLAN,**

    **Defendants.**

**Case No. 12-2505-DDC-GLR**

## MEMORANDUM AND ORDER

Plaintiffs, on behalf of themselves and others similarly situated, filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,[1] alleging that defendant Freightquote.com, Inc.[2] improperly classified them as salaried employees exempt from the FLSA's overtime-pay requirements. This matter comes before the court on plaintiffs' Renewed Unopposed Motion for Final Approval of Collective Action Settlement and for Approval of Award of Attorneys' Fees and Expenses (Doc. 222). For the reasons explained below, the court grants the motion.

**I.    Background**

This is plaintiffs' second unopposed motion seeking approval of the parties' FLSA collective action settlement. Plaintiffs filed their initial motion on March 1, 2016. Doc. 218. In

---

[1] Alternatively, plaintiffs assert putative class action claims under Fed. R. Civ. P. 23 for violation of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-312 *et seq.*, and the Employee Retirement Income Security Act of 974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. *See* Doc. 76 (Second Amended Complaint) at ¶¶ 1-2. These claims are not addressed by this Memorandum and Order because they are not part of the FLSA collective action conditional certification.

[2] Although plaintiffs bring this lawsuit against two defendants, plaintiffs assert their FLSA claims only against defendant Freightquote.com, Inc. Because this Memorandum and Order addresses only the FLSA claims, the court uses the singular form of the word "defendant," to refer to Freightquote.com, Inc.

1

that motion, plaintiffs asked the court to certify a final collective action, approve the settlement as fair and reasonable, and award attorney's fees and costs in an amount equal to one-third of the settlement. *Id.*

The court denied the motion without prejudice to refiling because the settlement agreement was not fair and equitable to all parties. Doc. 221 at 24. Specifically, the court refused to approve the settlement agreement because (1) it contained confidentiality provisions that contravened the FLSA's purpose, and (2) the amounts of the proposed service awards for the four representative plaintiffs were unreasonable. *Id.* at 20, 23. The court granted plaintiffs' request to certify a final collection action, however. *Id.* at 11. The court certified a final collective action for three subclasses of plaintiffs who worked in one of three job categories for defendant within the three-year period before the court's Order granting conditional collective action certification: (1) Account Representatives; (2) Truckload Coverage Specialists; and (3) Customer Activation Specialists. *Id.* The court did not address plaintiffs' request for approval of the attorney's fees and costs award because the request was premature. *Id.* at 23.

After the court denied plaintiffs' first motion seeking settlement approval, the parties engaged in additional settlement discussions and reached another settlement agreement. The new settlement agreement provides the same settlement payments to the opt-in plaintiffs as the original agreement provided, but it reduces the amounts of the service awards and attorney's fees. Plaintiff has submitted a copy of the new settlement agreement. Doc. 223-1. Under the terms of the new settlement agreement, defendant has agreed to pay a maximum of $5,000,000 (the "Gross Settlement Fund"), which the settlement will allocate as follows:

      1.      $30,000 service awards to the four representative plaintiffs;

      2.      $1,650,000 (representing one third of the Gross Settlement Fund) to plaintiffs' counsel as payment for all reasonable attorney's fees, costs, and expenses; and

      3.      $3,320,000 (the "Net Settlement Fund") to the 164 collective action members distributed on a *pro rata* basis.[3]

*Id.* at 5.

In exchange for the Gross Settlement Fund, plaintiffs have agreed, among other things, to release defendant from all claims that are, could have been, or were asserted in this lawsuit or that arise out of the same operative facts that named plaintiffs and/or collective action members may have against defendant. *Id.* at 9–10. The new settlement agreement also omits the confidentiality provisions that the original settlement agreement contained. *See generally id.*

Plaintiffs now ask the court to approve the new settlement agreement and the award of attorney's fees and costs contained in that agreement. After reviewing plaintiffs' revised submissions, the court approves the parties' settlement and the proposed attorney's fees and costs award. The court explains why below.

## II.    Legal Standard

### A.  FLSA Collective Action Settlement

The parties to an FLSA action must present a settlement of those claims to the court for review and a determination that the settlement is fair and reasonable. *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "To approve

---

[3]     The court explained the method for distributing the Net Settlement Fund on a *pro rata* basis in its April 11, 2016 Memorandum and Order denying without prejudice plaintiffs' first motion seeking approval of the settlement. Doc. 221 at 4.

an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353).

The court may enter a stipulated judgment in an FLSA action "only after scrutinizing the settlement for fairness." *Id.* (citing *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)); *see also Tommey v. Computer Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015) (citation omitted). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

Also, when parties settle FLSA claims before the court has made a final certification ruling, the court must make some final class certification finding before it can approve an FLSA collective action settlement. *Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

### B. Attorney's Fees Under the FLSA

The FLSA requires the parties to include in the settlement agreement an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)). The court has discretion to determine the amount and reasonableness of the fee, but the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *3 (citations omitted).

4

### III. Analysis

#### A. Settlement Approval

As explained above, a court may approve an FLSA settlement only after determining that (1) the litigation involves a bona fide dispute, and (2) the proposed settlement is fair and equitable to all parties. *Barbosa*, 2015 WL 4920292, at *3 (citation omitted). The court previously determined that the claims in this case present a bona fide dispute under the FLSA. Doc. 221 at 13. But the court was unable to conclude that the proposed settlement was fair and equitable under the terms of the original settlement agreement. *Id.* at 19–23. The parties have renegotiated their settlement and have entered into a new settlement agreement that adequately addresses the court's concerns about fairness and equity.

First, the new settlement agreement omits the confidentiality provisions that the original agreement included. The court rejected the original settlement agreement because it contained those provisions. *See Barbosa v. Nat'l Beef Packing Co., LLC*., No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014) (explaining that a confidentiality clause in an FLSA settlement agreement "'contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010))). By removing the confidentiality provisions from the new settlement agreement, the parties have alleviated the court's concerns on this point.

Second, the parties have reduced the proposed service awards for the four representative plaintiffs to the following amounts: $10,000 for Nancy Koehler, $10,000 for John Smith, $5,000 for Regina Brisbane, and $5,000 for Scott Matney. *See* Doc. 223-1 at 7. The total amount of the service awards ($30,000) represents 0.6% of the Gross Settlement Fund ($5,000,000), and it

adequately compensates each plaintiff for some 100 hours of time, that each plaintiff, on average, devoted to the lawsuit. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing the requested service awards to the four named plaintiffs from $15,000 to $5,000, which adequately compensated each plaintiff for the 80 hours of time, on average, that each devoted to the lawsuit); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391(RLM), 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 to two named plaintiffs and $5,000 to six opt-in plaintiffs which represented 1.1% of the total settlement). The court thus finds that the service awards contained in the new settlement agreement are fair and reasonable.

With these changes to the parties' settlement agreement, the court concludes that the new settlement agreement is fair and equitable to all parties. The court thus approves the proposed FLSA collective action settlement.

### B. Attorney's Fees and Costs

Plaintiffs' counsel seeks an award of $1,650,000, as attorney's fees, costs, and expenses incurred in this action.[4] This amount represents 33% of the Gross Settlement Fund. A percentage fee from a common fund award "must be reasonable and . . . the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Barbosa*, 2015 WL 4920292, at *7 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).

---

[4] Plaintiffs' counsel does not seek a separate award of costs or expenses. *See* Doc. 223 at 11 n.1. Instead, plaintiffs' counsel seeks the entire sum of $1,650,000 to compensate counsel for attorney's fees, costs, and expenses. Because counsel does not provide a separate accounting for the costs and expenses spent in this matter, the court cannot determine their reasonableness. The court, instead, analyzes the proposed fee award under the standard for determining the reasonableness of attorney's fees because counsel has provided the information necessary to make that determination for the entire amount sought.

To determine the fee award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); then citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). This method calls for a court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *4 (D. Colo. Sept. 3, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012). The hybrid approach also requires consideration of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Barbosa*, 2015 WL 4920292, at *8 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Johnson*, 488 F.2d at 717–19). The court analyzes these factors below.

### 1. Time and Labor Required

After litigating this case for more than four years, plaintiffs' counsel represents that they have spent more than 3,380 hours working on this matter. With the initial motion seeking

settlement approval, plaintiffs' counsel submitted billing records showing tasks completed for this matter amounting to about 3,300 hours. *See* Doc. 219-20. The tasks involved in this case included the researching and drafting of numerous pleadings and motions, extensive discovery including the review of voluminous document productions and multiple depositions, interviewing and communicating with clients and other witnesses, researching and drafting significant briefing on a motion to dismiss, motion for class certification, and motions for summary judgment, and participating in mediation and settlement negotiations that ultimately led to resolution of the dispute. The court finds that this litigation required significant labor by counsel that justifies the time recorded.

Matthew Osman billed the large majority of the hours recorded to the matter. Mr. Osman is the founding partner of his law firm, and he has about ten years' experience litigating wage and hour cases. Two of Mr. Osman's associates, Kathryn Rickley and Mikah Thompson, predominately billed the remaining hours recorded. Ms. Rickley has more than ten years' experience handling labor and employment law cases. Ms. Thompson worked at plaintiffs' counsel's firm for about two years. Before that, she worked for an employment law firm where she represented employers in various matters including employment discrimination and wage and hour lawsuits. An attorney associated with another firm billed about 30 hours to the matter. And two attorneys associated with Mr. Osman's firm and who have minimal legal experience billed the other time recorded to the matter, amounting to about only 30 hours of the total amount billed. The billing records also show that a legal assistant billed about 325 hours of the total amount of time recorded to the matter.

Plaintiffs' counsel does not provide hourly rates for the timekeepers who recorded time to this matter. Plaintiffs' counsel represents, however, that the requested fee award divided by the

8

total amount of time billed produces a "blended" hourly rate of about $490 an hour. Doc. 223 at 54. Plaintiffs' counsel concedes that this rate is on the "high end" for hourly attorney rates that our court has approved, but counsel argues that this rate is reasonable in light of all the risks and others factors present in this case. Plaintiffs' counsel also represents that this "blended" rate is similar to other "blended" rates awarded by our court. *See*, *e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, No. 10-MD-2138-JWL, 2013 WL 6670602, at *3 (D. Kan. Dec. 18, 2013) (calculating a lodestar with a blended hourly rate of $488 and approving a fee award that represented a 1.10 multiplier of the lodestar); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009) (awarding plaintiffs' counsel a "generous" fee award in an FLSA settlement using an hourly rate of $590.91). And plaintiffs' counsel has submitted hourly fee rates for plaintiffs' counsel in Kansas City in 2013, as reported by the *The Missouri Lawyers Weekly*. Doc. 219-23. Plaintiffs' counsel contends that the hourly fee requested here is similar to the prevailing market rates reported in this publication.

Because plaintiffs' counsel has not provided the hourly rates of the attorneys and the legal assistant who worked on this matter, the court itself will determine their reasonable rates, *i.e.* "the prevailing market rate in the relevant community for an attorney of similar experience," to determine a lodestar amount. *Solis*, 2014 WL 4357486, at *4; *see also Barbosa*, 2015 WL 4920292, at *9 ("[T]he Court fixes the reasonable hourly rate . . . and does so by examining evidence which shows what the market commands for analogous litigation."). In a recent case, Judge Vratil found hourly rates ranging from $180 to $425 reasonable, depending on each attorney's level of experience. *See Barbosa*, 2015 WL 4920292, at *10.

Here, Mr. Osman billed the majority of the hours in this litigation. He is experienced in employment law cases, particularly wage and hour cases. The court determines that a blended hourly rate of $400 for attorneys is reasonable for calculating the lodestar. While it is on the high end, that rate is consistent with partner hourly rates approved by our court in other FLSA cases. *See*, *e.g.*, *Barbosa*, 2015 WL 4920292, at *10. It also conforms to the prevailing rates in the Kansas City area for plaintiffs' counsel. The court also determines that $125 is a reasonable rate for the legal assistant's time recorded in this case.

Applying these rates to the hours recorded makes the lodestar $1,262,625.[5] This amount is less than the $1,650,000 award that plaintiffs' counsel asks the court to approve. Thus, this factor, when analyzed using the lodestar, may not favor approval of the fee award.

On the other hand, the $1,650,000 requested fee award is about 1.3 times the lodestar amount, and courts have approved similar multipliers when the other *Johnson* factors demonstrate the reasonableness of the fee. *See*, *e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *see also Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (approving a fee award representing a 2.28 multiplier from the modified lodestar calculation and a 1.75 multiplier from class counsel's hourly rates).

---

[5] The court calculated this figure as follows. First, the court multiplied the time recorded by the legal assistant (325 hours) by a reasonable hourly rate of $125 for a total of $40,625. Second, the court multiplied the remaining time recorded by the attorneys (3,055 hours) by the blended hourly rate of $400 for a total of $1,222,000. Adding the first and second figure, the grand total is $1,262,625.

The court recognizes that the requested fee award is on the high end, especially when compared to the lodestar. Nevertheless, the court approves the award because the other *Johnson* factors favor approval here, as demonstrated by their examination below.

### 2. Novelty and Difficulty of the Questions Presented

Plaintiffs' counsel asserts that the factual issues in this case presented more difficulty than a typical FLSA case because the case involved three different subclasses. Plaintiffs' counsel had to investigate the facts and develop legal theories for three different sets of employees within each subclass. When defendant argued that the employees in each of the three subclasses were exempt from the FLSA's requirements, plaintiffs' counsel had to argue, separately, how each subclass did not meet the requirements for exemption. Plaintiffs' counsel asserts that they developed distinct and differing discovery methods, legal arguments, and factual presentations for each of the three subclasses. This may be true, but the total amount of hours billed to the matter should reflect the additional work required to represent the three subclasses. The court already has taken into account that factor above. The court thus finds that the novelty and difficulty of the questions presented is a neutral factor in its analysis.

### 3. Skill Requisite to Perform the Legal Service Properly

Plaintiffs' counsel regularly prosecutes FLSA cases like this one. Plaintiffs' counsel is knowledgeable about the FLSA's requirements, and counsel submitted thorough and extensive briefing sufficiently addressing the many factual and legal issues involved in the case. In particular, Mr. Osman developed a dynamic damage model in Microsoft Excel format. He built the model in a way to manipulate it based on the total number of hours that an employee worked each week to determine the amount of class wide damages. Plaintiffs' counsel used that damage model to estimate defendant's exposure in the case and to negotiate resolution of the matter in

the parties' settlement talks. The court finds that the skill required to perform these tasks favors approval of the requested award amount.

### 4.     Preclusion of Other Employment

Plaintiffs' counsel represents that this lawsuit precluded counsel from taking on other work. As stated, counsel spent more than 3,800 hours on the case, a significant amount of time for a case that involved extensive discovery and heavy motion practice. Plaintiffs' counsel also represents that its firm hired Ms. Thompson partially to apply her ability and experience for work on this case. The court finds that the time and effort spent litigating the case demonstrates that the lawsuit precluded plaintiffs' counsel from working on other matters. This factor favors approval of the fee award.

### 5.     Customary Fee

"While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund." *Barbosa*, 2015 WL 4920292, at *11 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Gottlieb*, 43 F.3d at 482). Our court "typically applie[s] the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7). "Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).

Plaintiffs' counsel represents that their firm's entire business model is premised on only charging contingency fees to clients. In this case, plaintiffs originally agreed to a 40% contingency arrangement with plaintiffs' counsel. Under that arrangement, plaintiffs owed counsel no fees unless the matter resulted in a plaintiffs' judgment or settlement. The requested

fee award is less than the 40% contracted contingency arrangement, amounting to only 33% of the common fund. This percentage falls within "the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters." *Barbosa*, 2015 WL 4920292, at *11 (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting the same about a requested fee award that was 33% of the common fund). This factor also favors approval of the requested fee award.

### 6. Whether the Fee is Fixed or Contingent

As stated above, plaintiffs agreed to pay counsel on a contingency basis. That agreement entitled plaintiffs' counsel to 40% of any recovery, and it required plaintiffs to pay no fees if no recovery was obtained. Thus, under this arrangement, counsel assumed the risk of investing time and expenses in litigation that counsel might never recover. Our court has recognized, however, that courts, not the parties, determine the fees in FLSA actions. *See Bruner*, 2009 WL 2058762, at *8. A contingency fee agreement is only one of many relevant factors that courts must consider, and it provides no conclusive evidence of the reasonableness of a fee award. *Id.* The court here finds this factor a neutral one.

### 7. Any Time Limitations Imposed

Plaintiffs' counsel asserts that the time limitations imposed by FLSA cases are greater than those found in individual or class action litigation. Because FLSA collective actions involve opt-in classes, plaintiffs' counsel asserts that they had to move quickly to protect the interests of putative class members by filing consents to join the suit before the statute of limitations expired. Plaintiffs' counsel also argues that they faced pressure to move for

13

conditional certification of a collective action early in the case to gain leverage in settlement negotiations with defendant.  The court finds that these types of time pressures involving the statute of limitations and legal maneuvering to gain the best bargaining positions are inherent in every type of litigation and not specific to FLSA actions.  The Court finds this factor a neutral one.

### 8. Amount Involved and the Results Obtained

Plaintiffs' counsel obtained a favorable result for their clients.  Plaintiffs' counsel states that the Net Settlement Fund represents about 57% of the "best day value" of plaintiffs' claims.  This means that, with the settlement, plaintiffs have recovered 57% of the maximum damages (as estimated by plaintiffs' counsel) that plaintiffs could have recovered if defendant was found liable for violating the FLSA.  But, defendant contested its liability, and the ultimate outcome of this litigation (if it had not settled) remains in doubt.  This settlement avoids the uncertainty and rigors of trial and produces a favorable result for plaintiffs.  This factor favors approval of the fee award.

### 9. Experience, Reputation, and Ability of the Attorneys

The court already has discussed the experience, reputation, and ability of the attorneys above.  As noted, plaintiffs' counsel has experience litigating employment cases, particularly wage and hour cases.  The skill and experience of counsel is reflected in the court's use of a $400 blended hourly rate to calculate the lodestar.  As noted, this blended rate is on the high end of rates approved by our court in FLSA cases.  Because the court already has accounted for this factor in the lodestar, the court deems this factor neutral in its analysis.

14

### 10. Undesirability of the Case

Plaintiffs' counsel concedes that nothing about this case made it undesirable. But plaintiffs' counsel again discusses the contingency nature of the case and the risk an attorney assumes when he or she agrees to litigate a case on a contingency basis. The court already has considered this factor above and refuses to find the case undesirable simply because it involved a contingency fee agreement and the risk that comes with such an arrangement. This factor is a neutral one.

### 11. Nature and Length of Professional Relationship with the Client

Plaintiffs' counsel presents no evidence of any pre-existing attorney/client relationship with plaintiffs. Plaintiffs' counsel states that plaintiffs and counsel worked closely in this litigation for nearly four years and have developed a significant relationship. Plaintiffs' counsel concedes that it is unlikely that counsel will represent plaintiffs in any other matters in the future due to the specific nature of the claims here that are unlikely to recur. As our court has explained, however, "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Barbosa*, 2015 WL 4920292, at *12 (citing *Bruner*, 2009 WL 2058762, at *9 (further citation omitted)). The court finds this factor, which might matter in some cases, immaterial to its analysis here.

### 12. Awards in Similar Cases

Plaintiffs' counsel asserts that the requested fee award is consistent with awards approved in similar cases. As noted above, the requested fee award here represents 33% of the common fund. Historically, our court has approved fee awards in FLSA cases ranging from "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand

15

dollars to over five million dollars." *Barbosa*, 2015 WL 4920292, at *11 (citing *Bruner*, 2009 WL 2058762, at *7). The percentage of the fund that counsel seeks here as a fee award falls within the range our court has approved in other FLSA cases. *See*, *e.g.*, *id.* (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting that the same about a requested fee award, which was 33% of the common fund).

The court recognizes, however, that the requested fee award exceeds the lodestar calculation by a multiplier of 1.3. But, also as noted above, courts have approved similar multipliers when the other *Johnson* factors demonstrate the reasonableness of the fee. *See*, *e.g.*, *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at *3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case); *see also Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (approving a fee award representing a 2.28 multiplier from the modified lodestar calculation and a 1.75 multiplier from class counsel's hourly rates). After examining the other *Johnson* factors above, the court finds that they weigh in favor of approving the fee award.

In sum, based on its analysis of the lodestar and *Johnson* factors, the court concludes that the attorney's fees requested are fair and reasonable. The court thus grants plaintiffs' request for approval of the proposed attorney's fees and costs award.

### IV.    Conclusion

For the reasons explained above, the court grants plaintiffs' Renewed Unopposed Motion for Final Approval of Collective Action Settlement and for Approval of Award of Attorney's

Fees and Expenses (Doc. 222).  The court finds that the proposed settlement resolves a bona fide dispute and is fair and equitable to all parties.  The court approves the parties' settlement agreement establishing a common fund of $5,000,000 and awards (1) $1,650,000 to plaintiffs' counsel for attorney's fees and costs; (2) $30,000 to the four representative plaintiffs as service awards; and (3) $3,320,000 to plaintiffs for distribution on a *pro rata* basis, as explained in the settlement agreement.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Renewed Unopposed Motion for Final Approval of Collective Action Settlement and for Approval of Award of Attorneys' Fees and Expenses (Doc. 222) is granted.

**IT IS SO ORDERED.**

**Dated this 13th day of July, 2016, at Topeka, Kansas.**

                                                    **s/ Daniel D. Crabtree**
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**